IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **DAVID A. YINGLING,** | : | CIVIL ACTION NO. 3:19-CV-635 |
| | : | |
| Plaintiff | : | (Judge Conner) |
| | : | |
| v. | : | |
| | : | |
| **DEPARTMENT OF CORRECTIONS,** *et al.*, | : | |
| | : | |
| | : | |
| **Defendants** | : | |

# MEMORANDUM

Plaintiff David A. Yingling, a prisoner presently confined at the State Correctional Institution at Forest in Marienville, Pennsylvania, filed an amended complaint alleging claims pursuant to 42 U.S.C. § 1983, the Americans with Disabilities Act ("ADA"), and the Rehabilitation Act regarding the lack of medical treatment he received while incarcerated at the State Correctional Institution at Camp Hill ("SCI Camp Hill"). (See Doc. 43). Defendants the Pennsylvania Department of Corrections, SCI Camp Hill, and the Superintendent of SCI Camp Hill have filed motions to dismiss the amended complaint, which plaintiff has not opposed and which are now ripe for disposition. (See Docs. 27, 33). For the reasons that follow, the court will grant defendants' motions and also *sua sponte* dismiss certain John Doe defendants.[1]

---

[1] These defendants have not been served nor have they appeared in this action, likely due to their status as John Doe defendants.

I. **Background**

Plaintiff was at all times relevant to the amended complaint incarcerated at SCI Camp Hill.  (Doc. 43 at 1).

Plaintiff alleges that he was disabled in a car accident that occurred in October 1993.  (Id. at 2).  According to plaintiff, he is both physically and mentally disabled.  (Id.)  Since plaintiff's incarceration on May 5, 2016, plaintiff alleges that the defendant Pennsylvania Department of Corrections ("DOC") has failed to accommodate his disabilities.  (Id.)  Plaintiff does not identify his disabilities other than to allege that "there [are] just some things I cannot do."  (Id.)

On April 26, 2017, plaintiff was transferred to SCI Camp Hill.  (Id.)  While he was walking to R Block in that facility, he "fell out of movement" and "couldn't breathe."  (Id.)  Defendant Lieutenant John Doe No. 1 allegedly said to defendant corrections officer John Doe No. 2, "[y]ou have a medical emergency," but medical was not called.  (Id.)

Plaintiff also "fell out of movement" because he could not breathe while walking to C Block on an unidentified day.  (Id.)  Defendant corrections officer John Doe No. 3 said to plaintiff, "man, you are white as a sheet," but again, medical was not called.  (Id.)  Once plaintiff arrived at C Block, a nonparty corrections officer gave him a fresh shirt because he had been sweating.  (Id. at 3).

Plaintiff alleges that the nights were cold, and he thought he had caught a cold.  (Id.)  He went to sick call and saw nonparty Dr. Taylor, who prescribed prednisone, an antibiotic, and four breathing treatments per day.  (Id.)  Dr. Taylor also ordered an immediate breathing treatment.  (Id.)

2

Plaintiff returned to C Block and gave the doctor's orders to the "bubble." (Id.) Plaintiff called out for a breathing treatment; however, he received no response. (Id.) Later on, defendant lead corrections officer John Doe No. 4 told plaintiff, "[w]e are not doing you any favors," and plaintiff was not permitted to go to his breathing treatment. (Id.) Plaintiff alleges that he was locked in his cell and could not breathe. (Id.) In addition, he alleges that he could not go to the main yard for recreation nor to the dining room for meals because he could not breathe. (Id.) Plaintiff states that he lost 50 pounds during his stay at SCI Camp Hill. (Id.) He alleges that, during that time, his medication was discontinued "without reason or purpose." (Id.)

On May 30, 2017, while on his way to the dining hall, plaintiff collapsed by the end table because he could not breathe. (Id.) Defendant John Doe No. 4 saw him and said, "I noticed you've been in distress." (Id.) Plaintiff responded, "I need a breathing treatment now." (Id.) Plaintiff was then escorted to the medical dispensary, where a nonparty gave him the treatment and listened to his lungs. (Id.) She told him that his lungs should be clear by now, and plaintiff told her that the corrections officers would not let him attend his breathing treatments. (Id.) This unnamed person then called 911, after which defendant corrections officers John Does Nos. 5, 6, and 7 escorted plaintiff by ambulance to the hospital. (Id. at 3-4).

Plaintiff received a breathing treatment in the ambulance and another upon his arrival at the emergency room. (Id. at 4). Plaintiff alleges that he "died in the emergency room" but medical staff at the hospital "brought [him] back." (Id.)

3

Plaintiff was examined by a hospital doctor who informed him that he had a blood clot. (Id.) Plaintiff was placed in a private room to accommodate the three corrections officers that accompanied him, and he received various treatments including a stomach injection, prednisone, another medication, and breathing treatments. (Id.)

On the third day of plaintiff's hospital admission, defendant corrections officer John Doe No. 8 asked plaintiff's doctor for a discharge because, plaintiff alleges, plaintiff is costing SCI Camp Hill money. (Id.) The doctor refused to discharge plaintiff. (Id.) The next day, the same defendant approached a different doctor requesting a discharge for plaintiff. (Id.) Plaintiff was discharged that day, but before he left he received an unknown shot. (Id.) Plaintiff was then transported by ambulance back to SCI Camp Hill, where he was housed in the infirmary and received breathing treatments and oxygen. (Id.) After two days in the infirmary receiving these treatments, he was moved back to C Block without a blanket, bed linens, pillows, or toilet paper for two days, and he did not receive his breathing treatments.[2] (Id.)

On July 5, 2017, plaintiff was called to the medical dispensary where he was examined by Dr. Edwards. (Id.) Dr. Edwards listened to plaintiff's lungs and told him that he still needed breathing treatments. (Id.) Dr. Edwards ordered plaintiff to undergo two mandatory breathing treatments per day. (Id.) After the

---

[2] It is unclear from the amended complaint whether plaintiff did not receive his breathing treatments for the two days referenced only or for a longer period of time.

4

examination, plaintiff returned to C Block and gave the doctor's orders to the bubble. (Id.) Despite those orders, plaintiff did not receive the mandated breathing treatments. (Id.)

On July 7, 2017, plaintiff told a nurse while he was at pill line that the corrections officers were not letting him come to his breathing treatments. (Id.) She wrote plaintiff another order for breathing treatment, which he gave to the bubble. (Id.) Defendant corrections officer John Doe No. 9 was in the bubble at that time and allegedly crushed the nurse's orders into a ball and threw it in the trash, while telling plaintiff, "that's what I can do with that, it doesn't make any difference." (Id. at 5). Two other corrections officers witnessed this interaction, defendants John Does Nos. 10 and 11. (Id.) One said to him, "we're not doctors, we don't know," to which plaintiff replied, "you can read, can't you?" (Id.)

On July 8, 2017, plaintiff received his breathing treatments. (Id.) On July 9 2017, a nonparty female corrections officer gave plaintiff the pass ordered by Dr. Edwards and told plaintiff to keep the pass on him and in his cell, so he can get the breathing treatments needed. (Id.) Plaintiff did so, and received his prescribed breathing treatments until July 13, 2017, when he was transferred to SCI Forest. (Id.)

## II. Legal Standard

### A. *Sua Sponte* Dismissal Pursuant to the Prisoner Litigation Reform Act

Under § 1915(e)(2)(B) of the Prisoner Litigation Reform Act ("PLRA"), the court has an obligation to dismiss a complaint "at any time the court determines"

5

the complaint is frivolous or malicious, fails to state a claim on which relief may be granted, or seeks monetary relief against a defendant who is immune from suit. 28 U.S.C. § 1915(e)(2)(B). See, e.g., Brown v. Sage, 941 F.3d 655, 659 (3d Cir. 2019) (*en banc*) (noting that under the PLRA the district court shall at any time dismiss any case which, *inter alia*, fails to state a claim upon which relief may be granted); Lopez v. Smith, 203 F.3d 1122, 1126 n.6 (9th Cir. 2000); Bower v. Rey, 2016 WL 7324526 (M.D. Pa. Dec. 16, 2016); Bracey v. Pa. Dep't of Corr., No. 11-4 E, 2012 WL 1825828 (W.D. Pa. May 18, 2012) ("The Court's obligation to dismiss a complaint under the PLRA screening provisions is not excused even after defendants have filed a motion to dismiss."). That section applies to this action because plaintiff is complaining about prison conditions and is a prisoner proceeding *in forma pauperis*. In determining whether a prisoner's complaint states a claim under § 1915(e)(2)(B), the court is guided by the Rule 12(b)(6) motion to dismiss standard.

**B.    Motion to Dismiss**

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides for the dismissal of complaints that fail to state a claim upon which relief may be granted. FED. R. CIV. P. 12(b)(6). When ruling on a motion to dismiss under Rule 12(b)(6), the court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." Phillips v. County of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008) (quoting Pinker v. Roche Holdings, Ltd., 292 F.3d 361, 374 n.7 (3d Cir. 2002)).

Federal notice and pleading rules require the complaint to provide "the defendant fair notice of what the . . . claim is and the grounds upon which it rests." Phillips, 515 F.3d at 232 (alteration in original) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)). To test the sufficiency of the complaint, the court conducts a three-step inquiry. See Santiago v. Warminster Township, 629 F.3d 121, 130-31 (3d Cir. 2010). In the first step, "the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.'" Id. at 130 (alteration in original) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 675 (2009)). Next, the factual and legal elements of a claim must be separated; well-pleaded facts are accepted as true, while mere legal conclusions may be disregarded. Id. at 131-32; see Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009). Once the court isolates the well-pleaded factual allegations, it must determine whether they are sufficient to show a "plausible claim for relief." Iqbal, 556 U.S. at 679 (citing Twombly, 550 U.S. at 556); Twombly, 550 U.S. at 556. A claim is facially plausible when the plaintiff pleads facts "that allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678.

**III.     Discussion**

The moving defendants first argue that the DOC and SCI Camp Hill are immune from suit based on sovereign immunity.[3]  The Eleventh Amendment provides:

> The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.

U.S. CONST. amend. XI.  "'That a State may not be sued without its consent is a fundamental rule of jurisprudence having so important a bearing upon the construction of the Constitution of the United States that it has become established by repeated decisions of this court that the entire judicial power granted by the Constitution does not embrace authority to entertain a suit brought by private parties against a State without consent given.'"  Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 98 (1984) (quoting Ex parte State of N.Y. No. 1, 256 U.S. 490, 497 (1921)).  The Supreme Court of the United States in Hans v. Louisiana, 134 U.S. 1 (1890), "extended the Eleventh Amendment's reach to suits by in-state plaintiffs, thereby barring all private suits against non-consenting States in federal court."  Lombardo v. Pa. Dep't of Pub. Welfare, 540 F.3d 190, 194 (3d Cir. 2008).  Pennsylvania has expressly withheld consent.  42 PA. CONS. STAT. § 8521(b); see

---

[3] The court notes that the defense of sovereign immunity is properly raised pursuant to Federal Rule of Civil Procedure 12(b)(1).  In the interest of judicial efficiency, the court will construe defendants' motion as also brought pursuant to Rule 12(b)(1).  See FED. R. CIV. P. 1 ("These rules . . . should be construed administered, and employed by the court . . . to secure the just, speedy, and inexpensive determination of every action.").

Laskaris v. Thornburgh, 661 F.2d 23, 25 (3d Cir. 1981) ("By statute Pennsylvania has specifically withheld consent.").

The Eleventh Amendment protects state agencies when "'the state is the real party in interest.'" Beightler v. Office of Essex Cty. Prosecutor, 342 F. App'x 829, 832 (3d Cir. 2009) (nonprecedential) (quoting Fitchik v. N.J. Transit Rail Operations, 873 F.2d 655, 658 (3d Cir. 1989) (*en banc*)). Courts consider three factors to determine whether Eleventh Amendment immunity applies to a state agency: "(1) the source of the agency's funding--*i.e.*, whether payment of any judgment would come from the state's treasury; (2) the status of the agency under state law; and (3) the degree of autonomy from state regulation." Id. (quoting Fitchik, 873 F.2d at 659). Relevant here, the Court of Appeals for the Third Circuit has already held that the Pennsylvania DOC is immune from such a civil rights action. See Lavia v. Pa. Dep't of Corr., 224 F3d 190, 195 (3d Cir. 2000).

The Commonwealth of Pennsylvania is the real party in interest when the DOC and its prisons are sued under § 1983. Therefore, the court will dismiss with prejudice the DOC and SCI Camp Hill because they are immune under the Eleventh Amendment from plaintiff's § 1983 claims.

Defendants next argue that defendant Superintendent of SCI Camp Hill should be dismissed because he was not personally involved in the wrongs alleged by plaintiff in the amended complaint. "A defendant in a civil rights action 'must have personal involvement in the alleged wrongs to be liable,' and 'cannot be held responsible for a constitutional violation which he or she neither participated in nor approved.'" Baraka v. McGreevey, 481 F.3d 187, 210 (3d Cir. 2007). Further,

9

supervisory liability cannot be imposed under § 1983 by *respondeat superior*. See Ashcroft v. Iqbal, 556 U.S. 662 (2009); Monell v. Dep't of Social Servs., 436 U.S. 658 (1978); Rizzo v. Goode, 423 U.S. 362 (1976); Durmer v. O'Carroll, 991 F.2d 64, 69 n.14 (3d Cir. 1993). "Absent vicarious liability, each Government official, his or her title notwithstanding, is only liable for his or her own misconduct." Iqbal, 556 U.S. at 677. A plaintiff must show that an official's conduct caused the deprivation of a federally protected right. See Kentucky v. Graham, 473 U.S. 159, 166 (1985); Gittlemacker v. Prasse, 428 F.2d 1, 3 (3d Cir. 1970) (holding that a plaintiff "must portray specific conduct by state officials which violates some constitutional right.").

Other than naming him as a defendant and stating that he oversees the corrections officers, plaintiff fails to include any factual allegations against the Superintendent of SCI Camp Hill. At best, he or she may have been included as a defendant due to the supervisory role of a superintendent at a prison; however supervisory liability alone is insufficient to state a claim under § 1983. Further, and construing the amended complaint liberally, to the extent that plaintiff intended to assert a failure-to-train claim, there are simply no allegations in the amended complaint that would, if true, establish "(1) that an existing policy created an unreasonable risk of constitutional injury; (2) the supervisor was aware of this unreasonable risk; (3) the supervisor was indifferent to the risk; and (4) the injury resulted from the policy or practice." See Sample v. Diecks, 885 F.2d 1099, 1118 (3d Cir. 1989). Accordingly, the court will dismiss without prejudice defendant Superintendent of SCI Camp Hill.

For similar reasons, the court will *sua sponte* dismiss defendants John Doe Nos. 5, 6, and 7 for lack of personal involvement. The only allegation against John Doe Nos. 5, 6, and 7 is that they accompanied plaintiff to the hospital. Plaintiff alleges no wrongdoing on the part of these defendants and, thus, cannot show how their own conduct violated one of plaintiff's constitutional rights. To state a plausible claim for relief that can withstand a Rule 12(b)(6) challenge, plaintiff must allege facts that demonstrate how each defendant was involved in each violation of his rights. Plaintiff has failed to do so here, and thus, the court will dismiss these defendants without prejudice for lack of personal involvement.

Finally, the moving defendants argue that plaintiff has failed to state a claim under either the ADA and the Rehabilitation Act. To state a claim under the ADA, a plaintiff must allege that "(1) he or she is a 'qualified individual with a disability'; (2) he or she is being excluded from participation in, or being denied the benefits of some service, program, or activity by reason of his or her disability; and (3) the entity which provides the service, program or activity is a public entity." McDonald v. Pa. Dep't of Pub. Welfare, 62 F.3d 92, 95 (3d Cir. 1995). These pleading requirements are nearly identical for a claim under the Rehabilitation Act. See id. ("Whether suit is filed under the Rehabilitation Act or under the Disabilities Act, the substantive standards for determining liability are the same.").

As defendants rightly point out, although plaintiff alleges that he did not receive prescribed treatment for his medical condition, he does not allege that he

was excluded from participation or denied the benefits of any service, program, or activity because of his disability. Because plaintiff has not stated a claim under either the ADA or the Rehabilitation Act, the court will dismiss these claims without prejudice.

Generally, "plaintiffs who file complaints subject to dismissal . . . should receive leave to amend unless amendment would be inequitable or futile." Grayson v. Mayview State Hosp., 293 F.3d 103, 114 (3d Cir. 2002). The claims against the DOC and SCI Camp Hill are barred by the Eleventh Amendment, and, as such, are legally foreclosed. The court will deny leave to amend as futile for any § 1983 claim against these defendants. The remaining claims, including the ADA and Rehabilitation Act claims as well as the § 1983 claim against the Superintendent of SCI Camp Hill and John Doe Nos. 5, 6, 7, 10, and 11, however, are factually rather than legally deficient, and leave to amend these claims is appropriate. The court will thus grant leave to amend to allow plaintiff an opportunity to amend the amended complaint in conformance with this memorandum opinion.

**IV.   Conclusion**

For the foregoing reasons, the court will grant defendants' motions to dismiss and also *sua sponte* dismiss defendants John Doe Nos. 5, 6, and 7 with leave to amend granted. An appropriate order shall issue.

/S/ CHRISTOPHER C. CONNER
Christopher C. Conner
United States District Judge
Middle District of Pennsylvania

Dated:    September 28, 2020